UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>U.S. IMMIGRATION AND<br>CUSTOMS ENFORCEMENT,<br><br>Defendant. | Civil Action No. 25-1523 |

## DECLARATION OF FERNANDO PINEIRO

**I.   INTRODUCTION**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act Office (the "ICE FOIA Office"). The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of

Homeland Security ("DHS"). The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2. I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

3. This declaration describes the process by which ICE received Plaintiff's FOIA requests and searched for, processed, and disclosed responsive records

## II. PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

4. Plaintiff submitted its FOIA request to ICE on July 16, 2024, seeking:

1. Records, regardless of physical form or characteristics, sufficient to show for all claims or lawsuits brought against the US. Immigration and Customs Enforcement (ICE) and/or any of its agents or employees in which payments totaling $1,000 or more were disbursed from July 10, 2014 to the present:
• The name of all parties involved;
• The case or claim number;
• The jurisdiction in which the case or claim was brought (e.g., U.S. District Court for the District of Columbia, D.C. Superior Court, etc.);
• The date of resolution;
• The amount of money involved in the resolution and to whom it was paid;
2. For each case or claim detailed above:
• The complaint or claim form and any amended versions;
• The verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case.

5. On July 16, 2024, upon receipt of the FOIA Request, the ICE FOIA Office assigned the FOIA Request the tracking number 2024-ICFO-46766.

6. On July 22, 2024, the ICE FOIA Office tasked the ICE Office of the Principal Legal Advisor ("OPLA") to conduct a search for responsive records.

7. On August 12, 2024, the ICE FOIA Office issued a final response letter which stated that no records responsive to the FOIA request were found.

8. On August 29, 2024, Plaintiff filed an administrative appeal of ICE FOIA's final response.

9. On September 25, 2024, ICE remanded the appeal to the ICE FOIA Office to conduct a new search for records.

10. On October 1, 2024, the ICE FOIA Office tasked OPLA to conduct a second search for responsive records.

11. On May 15, 2025, Plaintiff filed the Complaint in this action.

12. On June 16, 2025, the ICE FOIA Office tasked OPLA to conduct a third search for responsive records for the FOIA request.

13. On July 2, 2025, the ICE FOIA Office issued a response to Plaintiff, which included the production of the Microsoft Excel document (in pdf format) that was responsive to Part 1 of the FOIA Request. The pdf document was released in full, with no withholdings asserted.

14. On September 19, 2025, after negotiations with Plaintiff's Counsel, Defendant conducted a search for Part 2 of the FOIA Request. On December 9, 2025, the ICE FOIA Office produced 3,833 pages of records that were responsive to Part 2 of the FOIA Request. The documents were released in full, with no withholdings asserted.

### III. ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

15. Each program office within ICE has a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of their particular program office. When the ICE FOIA Office receives a FOIA request, its first step is to identify which program offices within ICE, based on their experience and knowledge of ICE's program offices, are reasonably likely to possess records responsive to that request (if any) and to initiate searches within those program offices. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. Per the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment and based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness.

16. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their

individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, or USB storage devices. The determination as to how to conduct searches in response to a particular FOIA tasking is necessarily based on the manner in which each employee maintains his or her files.

17. Additionally, all ICE employees have access to email. ICE uses the Microsoft Outlook email system. Each ICE employee stores their files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook email files: some archive their files monthly, without separating them by subject; others archive their email by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

18. Individual employees archive their own emails according to their individual work-related needs. Individual archives of emails are searched by the individual employees where those employees have identified individual archives containing potentially responsive documents.

19. The searches conducted in this case followed ICE's standard procedure for conducting searches, as described above, as well as below, in further detail.

### IV. PROGRAM OFFICE TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFF'S FOIA REQUEST

20. ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries.

21. OPLA is the largest legal program in DHS with over 1,300 attorneys. Pursuant to statute, OPLA serves as the exclusive representative of the DHS in removal proceedings before the Executive Office for Immigration Review ("EOIR") litigating cases involving criminal aliens, terrorists, human rights abusers, and other priority aliens. OPLA also provides a full range of legal services to all ICE programs and offices. OPLA provides legal advice and prudential counsel to ICE personnel on their law enforcement authorities, legal liability under the Federal Tort Claims Act and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Freedom of Information Act and Privacy Act, ethics, and a range of administrative law issues, such as contract, fiscal and employment law. OPLA represents the agency before the Merit Systems Protection Board, the Equal Employment Opportunity Commission and the Contract Board of Appeals. OPLA attorneys also support the Department of Justice in the prosecution of ICE cases and in the defense of civil cases against ICE, including Freedom of Information Act ("FOIA") cases.

## V. OPLA'S SEARCH FOR RECORDS FOR PART 1 OF THE FOIA REQUEST

22. On July 16, 2024, upon receipt and review of Plaintiff's FOIA request, the ICE FOIA Office determined that OPLA was reasonably likely to have records responsive to the request.

23. The ICE FOIA Office tasked OPLA on July 22, 2024, to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.

24. In response to the FOIA tasking, the OPLA FOIA POC reviewed the substance of the FOIA request and relying upon their subject matter expertise and knowledge of OPLA's activities, determined that the OPLA District Court Litigation Division ("DCLD") should be tasked to conduct a search for responsive records. A Deputy Chief with DCLD, upon reviewing the request, did not conduct a search and deferred to the OPLA Government Information Law

Division ("GILD") to conduct a search because the FOIA request was for all "FOIA litigations" against ICE, and GILD handles FOIA litigations for ICE, not DCLD. GILD was inadvertently not tasked, and instead, the OPLA FOIA POC sent a "no records" response to ICE FOIA.

25. On August 12, 2024, the ICE FOIA Office issued a final response letter to Plaintiff, which stated that no records responsive to the FOIA request were found.

26. On August 29, 2024, Plaintiff filed an administrative appeal of ICE FOIA's final response.

27. On September 25, 2024, ICE remanded the appeal to the ICE FOIA Office to conduct a new search for records.

28. After the remand, the ICE FOIA Office tasked OPLA on October 1, 2024, to conduct a second comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.

29. In response to the second FOIA tasking, the OPLA FOIA POC, who is with OPLA GILD, conducted a search of the OPLA case management system, PLAnet. The search resulted in one (1) Microsoft Excel document being found. OPLA sent the responsive record to ICE FOIA for production on October 7, 2024.

30. This Microsoft Excel document was not produced to Plaintiff.

31. On June 16, 2025, the ICE FOIA Office tasked OPLA to conduct a third search for responsive records for the FOIA request. Specifically, upon litigation review, the ICE FOIA Office noticed that the Microsoft Excel document that had been provided to the ICE FOIA Office on October 7, 2024, was missing the "Settlement amount" column. As such, OPLA was asked to add that column to the Microsoft Excel document and to add any new cases that had been resolved since October 7, 2024.

32. In response to the third FOIA tasking, the OPLA FOIA POC conducted a search of the OPLA case management system, PLAnet once again. The search resulted in one (1) Updated Microsoft Excel document. Specifically, the OPLA FOIA POC added the "Settlement amount" column and additional cases that had been resolved since October 7, 2024. The Microsoft Excel document contained a total of 140 resolved cases that were responsive to the FOIA Request. OPLA sent the responsive record to ICE FOIA for production on June 16, 2025.

33. On July 2, 2025, the ICE FOIA Office issued a final response to Plaintiff, which included the production of the Microsoft Excel document (in pdf format) that was responsive to Part 1 of the FOIA Request. The pdf document was released in full, with no withholdings asserted.

## VI. OPLA'S SEARCH FOR RECORDS FOR PART 2 OF THE FOIA REQUEST

34. Part 2 of the FOIA Request stated: "For each case or claim detailed above: • The complaint or claim form and any amended versions; • The verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case."

35. For the 140 cases that were provided by OPLA, OPLA provided the case number for each case (e.g. 25-cv-1523). Within PACER ("Public Access to Court Electronic Records"), a user can simply insert the case number, select documents, and download or print various records filed in that case. Within all 140 cases, there is a "complaint," and a "verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case."

36. OPLA's original position was that it was not required to conduct a search for these records because they are already available online. Plaintiff simply had to go to PACER to download whatever records they seek from the 140 cases.

37. OPLA does not have a single repository for all "complaints" and "verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case". These documents may be found in the OPLA case management system, PLAnet, within individual OPLA

attorney's Microsoft Outlook Email accounts, within SharePoint, or within ICE Shared Network Drives. Locating the records this way would require more than a reasonable amount of effort.[1] In fact, the fastest way for OPLA to compile the "complaint," and a "verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case" for the 140 cases would be to manually go into PACER and download them from PACER as well.

38. Lastly, each case could have a different "paper that resolved the case." Sometimes there are "final judgments", sometimes there are "settlement agreements", sometimes there are "dismissal orders", sometimes there are "Clerks Judgment", sometimes there are "stipulations", sometimes there are "order of dismissal", etc.

39. For example, looking at the first three cases in the list of 140 cases that were provided, 18-cv-2257 had a "Settlement Agreement"; 19-cv-7058 had a "Stipulation and Order of Dismissal"; and 18-cv-4821 had a "Clerks Judgment."

40. Contrary to Plaintiff's assertions, they did not ask for "all settlement agreements." They also did not ask for "all settlement agreements not already posted on PACER." Plaintiff requested a "verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case." ICE's reasonable interpretation of that request is not "all settlement agreements" or "all settlement agreements not already posted on PACER." ICE's reasonable interpretation of the request is the "verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case" which can all be found on PACER.

41. After negotiations with Plaintiff's Counsel, on September 19, 2025, OPLA agreed to conduct a search for Part 2 of the FOIA Request. A legal intern within OPLA conducted the search of PACER of all 140 cases. The legal intern downloaded a copy of all complaints or

---

[1] *Marks v. United States*, 578 F.2d 261, 263 (9th Cir.1978).

amended complaints, and "[t]he verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case." A total of 3,833 responsive pages were found and produced to Plaintiff on December 9, 2025. Because the documents were found online via PACER, they were produced in full, without any withholdings asserted.

**JURAT CLAUSE**

   I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct to the best of my knowledge and belief.

  Signed this 16th day of January, 2026.

_____

Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009